James D. HOPPER, Appellant,

v.

Loretta C. HOPPER, Appellee.

Loretta C. Hopper, Appellant,

v.

James D. Hopper, Appellee.

Nos. S–12411, S–12471.

Supreme Court of Alaska.

Nov. 9, 2007.

Robert C. Erwin, Palmier Erwin, LLC, Anchorage, for James D. Hopper.

Ann DeArmond, Sterling & DeArmond, P.C., Wasilla, for Loretta C. Hopper.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Before us are two appeals of a decision setting aside a dissolution and dividing various pieces of property. The parties, Loretta and James Hopper, originally entered into a dissolution agreement which, among other things, awarded Loretta money from the sale of the marital home and up to $1,200 a month in spousal support, including a maximum of $600 for medical prescriptions and $600 for maintenance. Approximately a year and a half after the dissolution, Loretta filed an Alaska Civil Rule 60(b) motion to set aside the decree, arguing that she was incapacitated at the time of the dissolution. The superior court set aside the dissolution decree and ordered a new trial concerning division of property and debt. Following a trial, the superior court determined that four parcels of real property and three bank accounts were marital property, despite their earlier characterization during the dissolution as James's separate property. The trial court then divided this property equally and awarded Loretta prejudgment interest on the total amount owed to her. James appeals the trial court's decision to grant the Rule 60(b) motion, as well as the trial court's classification of various items of property and its award of attorney's fees and prejudgment interest to Loretta. Loretta separately appeals the trial court's ruling ending interim spousal support, and the two appeals have been consolidated. Although we conclude that the trial court erred in characterizing the Northrim bank account as marital property and in awarding enhanced attorney's fees based on a party's conduct outside of the litigation, we affirm the trial court's decision in all other respects.

## II. FACTS AND PROCEEDINGS

James and Loretta were married on October 17, 1994, and they have no children together. The parties filed a petition for disso-

lution of the marriage on September 3, 2002, proposing to divide a variety of property owned by the parties. The dissolution agreement provided that Loretta receive $65,000 from the sale of the marital home and an additional cash payment of $25,000. It also required that James pay Loretta $600 in spousal support until December 1, 2005. The dissolution agreement further provided that James assume certain debt, and perform a variety of other tasks, including completion of the parties' joint tax return for the year and payment of vehicle insurance for Loretta's car for a year. The parties filed an amendment to the agreement on November 7, 2002, extending the $600 spousal support until December 1, 2007, and requiring James to pay for Loretta's medical prescriptions, up to $600 per month, until Loretta's death or until insurance became available to her. Master Andrew M. Brown held the dissolution hearing on November 7, and Superior Court Judge Peter A. Michalski granted the dissolution on November 12, 2002.

Approximately a year and a half later, on March 25, 2004, Loretta filed a motion under Rule 60(b) of the Alaska Rules of Civil Procedure, seeking to set aside the dissolution decree. Loretta claimed that at the time of the dissolution she was ill and cognitively impaired due to her medical conditions and medication she was taking. Loretta also argued that the bargaining power of the parties was unequal, that James unfairly received a much larger portion of the divorce settlement, and that significant marital property had been mischaracterized as separate property. Loretta also pointed out that while James's attorney drafted the document, she did not have the benefit of counsel before she signed the dissolution agreement. James opposed the Rule 60(b) motion, arguing, among other things, that Loretta was not cognitively impaired and that her claims were time barred under Rule 60(b)'s one-year time limit.

Judge Michalski referred the case to Master Brown for a hearing on whether the Rule 60(b) motion should be granted. Master Brown heard evidence on the motion on April 1 and 15 of 2005 and found that "[t]he evidence is convincing that Ms. Hopper did not have the mental ability in the summer of 2002 to voluntarily and intelligently think about the terms of a petition for dissolution of marriage." The master also determined that the dissolution property division had omitted four marital financial accounts. The master recommended that the property division be set aside, with the exception of the monthly spousal support and prescription payments. The master's report was approved on June 1, 2005 by Judge Michalski, and a trial date was set to determine a new property division.

Loretta moved for full attorney's fees under Rule 82 of the Alaska Rules of Civil Procedure as the prevailing party on her Rule 60(b) motion. At the same time, she requested $5,000 in attorney's fees under AS 25.24.140 [1] so that she could pay for representation during the property division trial. James partially opposed the Rule 82 motion, arguing that while Rule 82 applies in this case, Loretta was entitled only to the thirty percent provided by the rule and not full fees. James opposed the request for attorney's fees to litigate the property division on the basis that Loretta had adequate funds to pay for an attorney. The issue was referred to Master Brown, who recommended that James pay Loretta's full fees under Rule 82, or $15,679.96. The master made this recommendation due to James's "bad faith conduct" in taking advantage of Loretta's incapacity at the time of the dissolution. The master also recommended that Loretta receive the requested $5,000 in interim attorney's fees to prepare for and conduct the property division trial because there was no evidence that the financial status of the parties had changed since the time of the mas-

---

1. AS 25.24.140 provides, in relevant part:
 (a) During the pendency of the action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including
 (1) attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action; in applying this paragraph, the court shall take appropriate steps to ensure that the award of attorney fees does not contribute to an unnecessary escalation in the litigation. . . .

ter's report. James objected to the master's recommendation concerning attorney's fees, arguing that he had not acted in bad faith and that there was no evidence that the parties' incomes were so disparate that an award of interim attorney's fees was warranted. Judge Michalski approved the master's recommendations on September 16, 2005.

The property trial was held before Judge Michalski on March 23 and 24, 2006. At issue were four real properties and various financial accounts. The parties stipulated during the trial that Loretta received $126,362 in property in the dissolution while James received $67,969. The trial court determined that all of the real property at issue was marital property because James bought and managed the properties during the marriage. As for the financial accounts, while the trial court recognized that James's First National Bank of Alaska (FNBA) checking and savings accounts were opened before the marriage, it nonetheless found that James had not met his burden of "establishing adequate tracing" to exclude any of the accounts from the marital estate. James also had a Northrim Bank account into which his Social Security payments were deposited, but the trial court held that because James did not demonstrate which payments to that account were made during the marriage and which were not, the entire account was marital. The trial court determined that the Vanguard and Schwab accounts were premarital accounts and therefore separate property. The court valued the property at the time of the dissolution and concluded that the total value of the marital assets at issue was $328,651. The trial court then awarded half of that amount to Loretta and interest on that amount from November 12, 2002, the date of the original dissolution decree.

James filed a motion for reconsideration, arguing that the order did not make any reference to the spousal support James was paying Loretta, that the trial court had used the wrong numbers for the mortgages on the

property at the time of the dissolution, and that the trial court had not taken into account the settlement Loretta had received under the original dissolution agreement. On reconsideration, the trial court corrected the amounts of the mortgages owed on two of the lots at the time of the dissolution, the value of which had been stipulated to by the parties at trial. Although the trial court adjusted its math calculations accordingly, it did not change any other aspects of the decision.

On August 29, 2006, about two weeks after the trial court's order on reconsideration, Loretta filed an expedited motion because James had stopped paying the spousal support as of July 1, 2006. James opposed the motion, arguing that the trial court's division of property did not require James to pay spousal support. The trial court's order stated: "Master Brown's extension of the $600 per month spousal support beyond the December 1, 2005 cutoff was an interim decision pending resolution of the property division which had not been completed. Now that the property division is complete the interim obligation is complete."

James now appeals, challenging the trial court's decision on the Rule 60(b) motion and the resulting property division, along with the award of attorney's fees and prejudgment interest. Loretta also appeals, challenging the superior court's termination of interim spousal support.

## III. STANDARD OF REVIEW

A trial court's grant of a Rule 60(b) motion is reviewed for an abuse of discretion.[2] We will find an abuse of discretion only when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[3] Determining what property is available for distribution in a divorce involves both factual and legal issues.[4] Legal decisions are reviewed de novo while factual decisions will only be set aside if clearly errone-

**2.** *McGee v. McGee,* 974 P.2d 983, 987 (Alaska 1999).

**3.** *Id.* (quoting *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994)).

**4.** *McGee,* 974 P.2d at 987.

ous.[5] Awards of attorney's fees are reviewed for an abuse of discretion.[6] In a divorce, the trial court has broad discretion in making an award of attorney's fees, and its award will only be reversed if it is "arbitrary, capricious, or manifestly unreasonable."[7] Prejudgment interest in a divorce case is within the broad discretion of the trial court and is reviewed for an abuse of discretion.[8] A spousal support award is reviewed for abuse of discretion.[9]

## IV. DISCUSSION

### A. The Civil Rule 60(b) Motion

James argues that the Rule 60(b) motion was improperly granted because it was not timely. He bases this argument on his view that the motion should have been brought under subsections (1)-(3) of the rule, all of which have a one-year time limit for bringing claims. Loretta responds that her motion was timely and properly granted under Rule 60(b)(6). Loretta also contends that James's appeal of the trial court's grant of the Rule 60(b) motion was untimely, having been filed nearly fifteen months after the trial court's ruling on the motion.

#### 1. James timely appealed the Rule 60(b) decision.

Under Alaska Rule of Appellate Procedure 204(a)(1), a notice of appeal must be filed within thirty days of the distribution of the judgment from which an appeal is taken. A denial of a motion to set aside a judgment is a final judgment for purposes of Appellate Rule 204(a)(1).[10] But while a denial of a Rule 60(b) motion effectively ends a case, the granting of a Rule 60(b) motion will usually be followed by additional proceedings. In this case, after Loretta's Rule 60(b) motion was granted, the court conducted a new trial before issuing its decision dividing the marital property. James properly waited until after the property trial to appeal both the Rule 60(b) ruling and the decision of the trial court regarding the property division. James's appeal is therefore timely.

#### 2. Loretta's Rule 60(b) motion was properly granted.

In her motion to set aside the dissolution, Loretta argued that she was entitled to this relief under Rule 60(b)(6) because of her cognitive impairment, lack of representation by counsel, and her mistaken underlying assumption that all of the property belonged to James and she therefore was not entitled to any portion of it. James argues that Loretta filed her Rule 60(b) motion too late because her claims all fall within subsections (1)-(3) of the rule, all of which require that claims be brought within one year. Loretta argues that her motion was properly brought under subsection (b)(6) and was therefore timely.

Rule 60(b) provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer

---

5. *Id.*

6. *Id.* at 987–88.

7. *Schmitz v. Schmitz,* 88 P.3d 1116, 1122 (Alaska 2004).

8. *Ogard v. Ogard,* 808 P.2d 815, 817 (Alaska 1991).

9. *Silvan v. Alcina,* 105 P.3d 117, 120 (Alaska 2005).

10. *Calhoun v. Greening,* 636 P.2d 69, 72 n. 4 (Alaska 1981).

equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c).

James argues that Loretta's claims of cognitive impairment, lack of representation by counsel, and mistaken assumption regarding the property all fall within subsection (1)'s provisions for mistake or excusable neglect. But we need not address the questions of Loretta's cognitive impairment and lack of representation, however, because the master also concluded:

Mr. Hopper may have brought a significant amount of business property into the marriage. However, there is no evidence that all the properties listed in the Petition—or those not listed—that went to him were pre-marital properties that were never affected by either "transmutation" or "active appreciation" during the marriage.

We have previously articulated four factors which justify setting aside a property division under Rule 60(b)(6): "(1) the fundamental, underlying assumption of the dissolution agreement ha[s] been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [property in dispute] was the parties' principal asset." [11] In *Lacher v. Lacher*, we affirmed a decision to set aside a dissolution under Rule 60(b)(6) on the ground that "the original property division failed to dispose of substantial items of marital property." [12] The dissolution agreement in this case left a significant amount of real property out of the marital estate, despite the fact that it was acquired during the marriage. In addition, the dissolution agreement did not include James's FNBA, Northrim Bank, Vanguard, or Schwab accounts. As the master noted in his decision to recommend Rule 60(b) relief, James received property with a total value of

$1,455,080, while Loretta received only $90,000 from the sale of one property, the marital home. Thus, this case, like *Lacher*, involved a dissolution that omitted "substantial items of marital property." And *Lacher* was decided under Rule 60(b)(6), which is not subject to the one-year time limit. As such, the decision of the trial court in this case to set aside the dissolution agreement was not an abuse of discretion.

## B. Real Property

There are four pieces of real property at issue in this case-two "Irey" lots and two "Fouts" lots. The trial court determined that all four of the lots were marital and divided them evenly between James and Loretta.

James and his first wife, Casey Hopper, had owned a business that rented properties. As part of their divorce agreement, they jointly owned and managed the four properties together. James and Casey later entered into a post-decree property settlement agreement under which James quitclaimed to Casey all four lots—Irey Lots 20 and 21 and Fouts Lots 1 and 2—on September 30, 1994.

At some point, Casey transferred her interest in Irey Lot 20 to Kym Wolcott, her granddaughter. On October 16, 1997, Wolcott transferred half of her interest in Irey Lot 20 to James, but this was four years after his marriage to Loretta. Wolcott then transferred her remaining half interest in the property to James on April 9, 1999. James did not pay anything for the remaining half interest. On the dissolution paperwork, James indicated that Irey Lot 20 was valued at $145,000. At the time of the dissolution, Irey Lot 20 had a remaining mortgage of $45,010.38.

James lived in the house on Irey Lot 21 up until his marriage to Loretta. After James moved out, he continued to manage the property, including locating tenants, collecting rent, keeping it in good repair, and paying the taxes. Casey sold Irey Lot 21 back to James on August 13, 1998, again after his

---

11. *Lacher v. Lacher*, 993 P.2d 413, 419 (Alaska 1999) (quoting *Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989)).

12. *Lacher*, 993 P.2d at 419–20.

marriage to Loretta. James paid Casey $55,000 for the property. At the time of the dissolution, James estimated the property's worth at $150,000, with a remaining mortgage of $40,557.81. James made the payments on the property during the marriage using money from the properties' rental income. Although James claimed not to have used assets from the marital estate to make payments on the properties, he worked as a property manager of the properties throughout the marriage. James eventually sold Irey Lot 21 in July of 2004 for $155,000.

James also managed the Fouts properties, even after they were transferred to Casey. Fouts Lots 1 and 2 were transferred from Casey to James on December 11, 1997. James paid Casey $75,000 for the properties. The mortgage remaining on the properties at the time of the dissolution was $64,905.88. James made the payments from the rents collected from the tenants on the properties. James sold the property during his marriage to Loretta and received $89,506.22, which he placed into his FNBA savings account.

James claimed that he did not put a lot of work into managing the properties. He collected the rent, and if there was a problem, he called someone to make repairs. James also testified that Loretta did not actively participate in James's business in any way. But the superior court reasoned that because James repurchased the real property from his ex-wife during his marriage to Loretta, paying for them through his work as a property manager during the marriage, the properties were part of the marital estate:

His [James's] familiarity with the properties and the fact he *once* owned them has confused him into the notion that they are "premarital properties." They are marital properties due to his purchases and management of them during marriage. Because it is evident that he was actively managing the properties during the marriage they are "marital" regardless of how "effortless" it may have seemed to him. Clearly, he was doing something his invalid prior wife was incapable of doing. Thus, these were marital properties and are to be included in the marital estate for division.

The trial court valued the Irey lots based on the values set out in the dissolution agreement and valued the Fouts lots based on the amount that James earned from his sale of the property during the marriage.

■ James argues that the properties are all separate properties because there was never an intent to treat the properties as marital, Loretta's name was never put on the title, and Loretta did not assist in the maintenance and upkeep of the properties. James also argues that there was no active appreciation on the properties during the marriage because he did not maintain the properties himself but contracted to have the maintenance done by other individuals. He also argues that any appreciation on the property during the marriage was the result of the real estate market in Anchorage and not due to James's efforts during the marriage. Loretta responds that rent earned on the four parcels was attributable to James's labor and was therefore marital in nature because it constituted income from spousal efforts during the marriage.

■ All of James's activities during the marriage in managing the property, finding renters, hiring people for maintenance purposes, and paying the various bills and taxes, generated rental income. Before James bought the properties back from Casey, the income he received from the rents from the properties was akin to a salary received for his property management services. As we have recognized, "[a]ssets acquired during marriage as compensation for marital services—most commonly salaries earned by either spouse during marriage—are considered marital assets." [13]

■ While "[p]roperty purchased during a marriage, yet paid for out of one party's separate assets, may be considered a premarital asset so long as the parties did not demonstrate an intent to jointly hold the property," [14] here, James did not purchase the property with separate assets. James

**13.** *Schmitz v. Schmitz*, 88 P.3d 1116, 1124 (Alaska 2004) (internal quotations omitted).

**14.** *Lowdermilk v. Lowdermilk*, 825 P.2d 874, 878 (Alaska 1992).

received half of the rental proceeds for his management of the property and then used those rental proceeds to pay the mortgage after he bought the properties back from Casey. Therefore, the trial court properly determined the real property to be marital in character.

### C. Financial Accounts

#### 1. FNBA savings and checking accounts

James opened his FNBA savings account on January 11, 1984. James deposited the proceeds from the sale of the Fouts lots into this account. The trial court valued the savings account at $19,313.

James opened his FNBA checking account on June 1, 1994. The amount in the account at the time of the dissolution was $6,858.00. James sometimes referred to this account as the "business account," and he paid the bills from and deposited the rent into that account.

 Because the rental proceeds from the real property were marital property, James was therefore depositing marital income into what were otherwise his premarital bank accounts. In *Schmitz v. Schmitz,* we reviewed a decision of the trial court classifying various bank accounts as separate property.[15] As bank accounts are a secondary asset, the court must first identify the asset from which it was derived and determine whether that asset was marital or separate property.[16] The party seeking to prove that the bank account is separate property has the burden of proof, and the bank account is presumed to be marital property if it is not possible to determine whether the account was funded through primarily separate or marital property.[17] If it is known that a bank account contains both separate and marital funds but the amount from each source cannot be determined, then "[t]he unknown amount contributed from the separate source transmutes by commingling and becomes marital property."[18]

James did not make any attempt at trial to show what money in his checking account was derived from rents from the disputed four parcels of property and his other properties. The record does not contain any information regarding the checking account, other than James's testimony that he deposited rental proceeds and paid property bills out of this account. James testified that he deposited the proceeds from the sale of the Fouts lots into his personal savings account. There was no evidence as to what other money was placed into this account, including whether any money from the rental proceeds of the Irey and Fouts lots was placed into this account. James is the party with the burden to establish that these accounts were not marital, and he has not presented adequate evidence to support such a finding. Thus, the trial court properly concluded that both the checking and savings accounts were marital property.

#### 2. Northrim Social Security account

James instructed that his Social Security payments be directly deposited into his Northrim account, and he testified that this was the only source of funds deposited into this account. Loretta offered no evidence to challenge this testimony. James receives $894 per month from Social Security. A bank statement covering the period from November 1–29, 2002 showed a starting balance of $4,467.92 and an ending balance of $4,961.92. In the trial court's final order regarding the property division, the court stated:

> The deposits to the Northrim Bank were established to be Social Security payments only. Only the Social Security payments received during the marriage would have taken on a marital quality. The plaintiff [James] did not adequately show the change, if any in the account, to exclude any of the balance. Thus the account is marital.

---

15. 88 P.3d at 1127.

16. *Id.* at 1127–28.

17. *Id.* at 1128.

18. *Id.* at 1128–29 (quoting BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5.23, at 268 (2d ed.1994)).

The trial court therefore valued the Northrim account at $4,468, the amount that was closest to the amount in the account at the time of the dissolution.

 We have recognized that "[t]he doctrine of federal preemption prevents state courts from dividing [S]ocial [S]ecurity benefits."[19] Thus, even when the Social Security benefits were deposited during the marriage, they remained James's separate property.

James testified at trial that only his Social Security benefits are paid into the Northrim account. The account summary submitted as an exhibit at trial also shows only a deposit from the "US TREASURY—SOC SEC." Once James established that the account included only Social Security payments, the burden shifted to Loretta to show that James had improperly mixed the account with marital money, thereby turning the account into marital property. As Loretta presented no evidence regarding any payments into the account besides Social Security, she has not met her burden. As James's Social Security benefits cannot be divided, it was error to determine that the account was marital property. The trial court's determination that this account was marital is therefore reversed.

### D. Attorney's Fees and Prejudgment Interest

#### 1. Attorney's fees

There are two separate fee awards at issue in this appeal. The first is the award of actual attorney's fees under Rule 82 to Loretta in the amount of $15,679.96 for prevailing on the Rule 60(b) motion. The second is the court's award of $5,000 to Loretta in interim fees in order to litigate the property and debt distribution.

In his recommendation concerning attorney's fees, Master Brown stated that James had taken advantage of Loretta's mental incompetence and physical disabilities and used her son in order to get her signature on a dissolution petition that was "greatly and inequitably weighted" in James's favor. The

master found that James took advantage of his skills as a "successful businessman" and Loretta's incapacity in formulating the dissolution petition and concluded that James's actions amounted to "bad faith conduct" under Rule 82(b)(3)(G). The master therefore recommended that Loretta receive full actual reasonable attorney's fees under Rule 82. The superior court approved this recommendation.

We have previously held that Rule 82 can be used to award attorney's fees to the prevailing party in a Rule 60(b)(6) motion to modify a divorce decree and that the divorce exception to Rule 82 is inapplicable to post-judgment modification and enforcement motions.[20] Thus, the only question is whether the trial court abused its discretion in awarding Loretta enhanced attorney's fees based on its finding that James had acted in bad faith.

James argues that he did not act in bad faith "during the course of the present proceedings" and that his actions during the litigation did not meet the standard for bad faith or vexatious conduct required for enhanced fees under Rule 82(b)(3)(G). (Emphasis omitted.) He also maintains that bad faith conduct justifying an enhanced fee award must occur during the litigation and not during the underlying transaction. Loretta responds that James did act in bad faith because he did not disclose major assets on the dissolution petition and used Loretta's son to help prepare the petition and get Loretta to sign it. Loretta also claims that James acted in bad faith in litigating a "patently incorrect claim" that all the property was his separate property.

 The master's report found bad faith related to James's actions surrounding the drafting of the dissolution agreement and did not make any findings regarding any bad faith or vexatious actions taken by James during the litigation itself. In *Cole v. Bartels*, we noted that "the bad faith conduct warranting an enhanced fee award under Rule 82(b)(3)(G) occurs *during the litigation*, not during the underlying transaction that is

**19.** *Mann v. Mann,* 778 P.2d 590, 591 (Alaska 1989).

**20.** *McGee v. McGee,* 974 P.2d 983, 992 (Alaska 1999).

the subject of the litigation."[21] As there were no findings that James acted in bad faith during the litigation, but only during the drafting of the underlying dissolution agreement, it was an abuse of discretion to award enhanced attorney's fees based on a finding of bad faith. Thus, the award of $15,679.96 in Rule 82 attorney's fees is reversed and remanded to the superior court.

■ When the master recommended that Loretta receive full Rule 82 attorney's fees, he also recommended that Loretta receive $5,000 in interim attorney's fees to litigate the remaining property and debt issues. The master noted that there was no evidence that the parties' relative financial situations were any different than at the time of the dissolution. The master stated that Loretta's gross annual income was only $22,020.78, including the monthly spousal support and prescription payments she received from James, while James's annual income was $124,879.86. The master determined that due to the parties' vastly disparate incomes and the fact that Loretta's financial situation was "the fruit of an inequitable agreement," Loretta should be awarded interim attorney's fees. Judge Michalski approved this recommendation. We conclude that it was not an abuse of discretion to award the attorney's fees based on the significant difference in the parties' incomes, and we therefore affirm the interim fee award.

### 2. Prejudgment interest

■ In the final property division order, the trial court awarded Loretta $164,325.50 with prejudgment interest from the date of the dissolution. James argues that it was error to award Loretta prejudgment interest on the property division. James contends that although a court may award prejudgment interest in a divorce case, it must balance a number of factors which were never taken into account by the superior court in this case. Loretta responds that the award of prejudgment interest was well within the

discretion of the trial court because she was denied use of the property award for a period of almost four years and the award was therefore necessary to make her whole.

In *Morris v. Morris*, we recognized that a trial court has broad discretion to award prejudgment interest in a divorce case but that interest should not be awarded if it "would do an injustice."[22] As Loretta points out, she was denied the money and any interest on the money for the four years between the dissolution and the final property judgment. It is not apparent that the award would work "an injustice" on James; it was therefore not an abuse of discretion to award prejudgment interest in this case.

### E. Spousal Support

In the original dissolution agreement, James agreed to pay Loretta $600 per month in spousal support until December 1, 2005. At the dissolution hearing, the parties filed an amendment to the agreement, whereby the obligation of $600 per month in spousal support was extended to December 1, 2007, and James agreed to pay Loretta up to an additional $600 per month for medical prescriptions for the rest of Loretta's life or until government programs were available to cover the prescriptions.

In the master's report following the hearing on the Rule 60(b) motion, the master stated:

> It is therefore recommended that the division of property and debts under the November 12, 2002 Decree of Dissolution of Marriage be vacated, except that Mr. Hopper be required to continue paying the $600.00 per month spousal maintenance and up to $600.00 per month for Ms. Hopper's medical prescriptions, as she needs these payments to continue and he can afford to pay them. (Emphasis omitted.)

Judge Michalski approved the master's report and for the interim ordered: "The division of property and debts under the No-

---

**21.** 4 P.3d 956, 961 n. 24 (Alaska 2000); *see also Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 145 (Alaska 2004) (stating that "conduct undertaken in 'bad faith' for the purposes of Rule 82 must relate to conduct during the litigation, and

not to actions taken during the underlying transaction").

**22.** 724 P.2d 527, 530 (Alaska 1986) (internal quotations omitted).

vember 12, 2002 Decree of Dissolution of Marriage is vacated, except that Mr. Hopper shall continue to pay Ms. Hopper $600.00 per month in spousal maintenance and up to $600.00 per month for her medical prescriptions."

But the final order on the property division dated June 14, 2006 did not contain any mention of the spousal support. James filed for reconsideration of the final property division order, arguing that the order did not refer "to either the continuation, termination or enforcement" of the spousal support. However, the superior court's order on reconsideration did not mention the spousal support payments.

On August 29, 2006, about two weeks after the court's order on reconsideration, Loretta filed an expedited motion to show cause because James had stopped paying spousal support.[23] James opposed the motion, arguing that the final decision of the trial court regarding marital property did not require him to pay spousal support. The court's order regarding spousal support stated: "Master Brown's extension of the $600 per month spousal support beyond the December 1, 2005 cutoff was an interim decision pending resolution of the property division which had not been completed. Now that the property division is complete the interim obligation is complete."

■ Loretta argues that when the superior court vacated the original dissolution, it vacated the property and debt division, but did not vacate the part of the dissolution agreement requiring the spousal support payments. Loretta also notes that the trial concerned the "division of property and debts" and did not mention spousal support. Loretta states that spousal support was not contested during trial, although James did briefly testify about Loretta qualifying for Medicare. In her appeal, Loretta argues that the original spousal support order was never rescinded and therefore remained in effect even after the court's final property decision.

But as James notes, the trial court's act in vacating the dissolution decree and its property division in fact vacated the entire agreement, and not just certain parts. James is correct in pointing out that the final property division did not require the spousal support payments to continue, and the trial court therefore properly ordered that they were not required. James maintains that due to the amount of property Loretta received in the revised property division, there is no equitable reason to require spousal support to continue.

■ As we have stated in the past, the trial court should attempt "to resolve the financial concerns arising from a divorce by means of the property division," but spousal support may be awarded if it is "just and necessary."[24] In this case, the superior court divided the property between the parties and determined it was not necessary for James to pay Loretta spousal support after she received her portion of the property division. And it was Loretta who moved to set aside the dissolution agreement under Rule 60(b). Once that motion was granted, the entire dissolution agreement and property division was set aside, not just pieces of it. While the trial court chose to award interim spousal support to Loretta until the final property division was concluded, it was not an abuse of discretion for the trial court to determine that Loretta was no longer entitled to spousal support following the property division.

## V. CONCLUSION

The superior court's determination that the Northrim bank account containing Social Security payments was marital property was incorrect, and therefore the trial court is REVERSED on that issue. The award of enhanced attorney's fees under Rule 82 is also REVERSED because it was based on conduct falling outside the litigation. All

**23.** Loretta's motion to show cause does not indicate whether James had stopped paying just the $600 in spousal support or whether he had also stopped making the medical prescription payments. It is unclear from the briefing of the parties whether James is still paying Loretta's prescription costs.

**24.** *Fernau v. Rowdon,* 42 P.3d 1047, 1058 (Alaska 2002).

other decisions by the trial court are AFFIRMED, and the case is REMANDED for proceedings consistent with this opinion.

BRYNER, Justice, not participating.