**Jason WOOTEN, d/b/a Glynwood Apartments, and Dennis Ray Skan, Appellants,**

v.

**Jason HINTON, Lydia Martinez, Robert Brandon, and Samantha Moffet, Appellees.**

No. S–12883.

Supreme Court of Alaska.

March 6, 2009.

---

Brett von Gemmingen, Law Offices of Brett von Gemmingen, LLC, Anchorage, for Appellants.

James J. Davis, Jr., Goriune Dudukgian, and Ryan Fortson, Northern Justice Project, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, CARPENETI, and WINFREE, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

This appeal addresses the claim of the owner and the senior apartment manager of the Glynwood Apartments (Glynwood) that they were the prevailing parties, and thus

entitled to attorney's fees, in a lawsuit brought by four of their tenants. Glynwood argues that because the tenants chose to dismiss their case with prejudice after they reached a settlement with Glynwood's insurance carrier, it is the prevailing party. Glynwood also appeals the trial court's refusal to award discovery sanctions against the tenants. Because the superior court acted well within its discretion, because accepting Glynwood's arguments would lead to a decision contrary to the policies in favor of settlement agreements, and because the real dispute in this case is between Glynwood and its insurance carrier, we affirm the superior court's judgment in all respects.

## II. FACTS AND PROCEEDINGS

On April 5, 2006, four tenants, Jason Hinton, Lydia Martinez, Robert Brandon, and Samantha Moffet, filed a complaint for declaratory and injunctive relief and damages against their landlord, Jason Wooten, and senior apartment manager, Dennis Ray Skan. The tenants sought "to remedy the racist, illegal and abusive policies" they alleged Glynwood was applying to low-income tenants who lived at Glynwood Apartments. The tenants claimed that the Glynwood management team had created a "culture of fear and intimidation" by verbally abusing them and threatening them with "baseless eviction actions" as retaliation for routine maintenance requests. The tenants also alleged that Skan used racial epithets and that Glynwood evicted, intimidated, or bullied other African–American tenants of the apartment complex.

All four tenants alleged violations of Alaska's Uniform Residential Landlord Tenant Act,[1] as well as claims of assault, wrongful eviction, threats of eviction, and intentional and negligent infliction of emotional distress. In addition, plaintiff Hinton alleged slander and violation of the Alaska Human Rights Act,[2] and in an amended complaint, plaintiff Martinez alleged malicious prosecution.

Glynwood was initially represented by Brett von Gemmingen. Glynwood's insurance carrier then became involved in the case

under a reservation of rights and Donald Thomas filed an entry of appearance as co-counsel. Thomas later stated that "the express reference" to himself as co-counsel in his entry of appearance "was done in recognition that so long as the insurer was defending under a reservation of rights, [Glynwood] had the right under AS 21.89.100 to be represented and defended in the lawsuit by their own independent counsel." Von Gemmingen then withdrew from the case, and he stated in a letter to Thomas that his "services as independent counsel" were no longer needed "[s]ince the insurer has elected to waive its coverage defenses by defending with [Thomas as] counsel." Thomas filed a motion to withdraw from the case, stating that "a dispute [had] arisen as to the legal effects" of his appearance as co-counsel for Glynwood. Glynwood then re-hired von Gemmingen as its attorney "at [its] own expense."

The following month, the tenants reached a settlement with Glynwood's insurer, under which the tenants received $45,000 in exchange for the release of their claims against Glynwood. The day the settlement was reached, Glynwood filed a motion to consolidate this case with a different action regarding the tenants' security deposits. On January 17, 2007, the tenants opposed the motion to consolidate and notified the court that they had reached a "global settlement" and would "be filing a stipulated dismissal of this case with prejudice in accordance with Civil Rule 41(a)." The tenants also notified the court that they had sent a copy of their opposition to the motion to Glynwood's counsel on the same date. But an affidavit by von Gemmingen dated January 24, 2007, maintained that he had "not had any settlement discussions with Plaintiffs or their attorneys" and that his clients had "not agreed to any settlement of this case." A week later Glynwood filed a motion to compel discovery and a request for sanctions.

Thirteen days later, on February 13, 2007, the tenants voluntarily moved to dismiss their case with prejudice under Alaska Civil

---

**1.** AS 34.03.010 et seq.

**2.** AS 18.80.010–.300.

Rule 41(a)(2),[3] stating that their motion was "[i]n exchange" for a $45,000 settlement payment from Glynwood's insurer. Glynwood opposed the motion for voluntary dismissal and filed a cross-motion, seeking an entry of final judgment and designation as the prevailing party. Glynwood also asked the court to "reserve the settlement funds in the court registry" until the costs and fees owed to Glynwood could be determined.

Superior Court Judge Craig F. Stowers heard oral arguments on the cross-motions and granted the tenants' motion to dismiss their case with prejudice. The superior court concluded that the tenants were prevailing parties because Glynwood, through its insurer, had paid "a substantial amount of money" to settle the case and that "on those facts alone ... the plaintiffs would be the prevailing party here." The tenants did not seek attorney's fees, nor were they granted any.

Glynwood filed a motion for reconsideration, arguing that while the trial court's ruling "was based upon the assumption that Defendants' insurer had reached some type of agreement with Plaintiffs," any agreement between the tenants and the insurer was "not a part of the record in th[e] case." Glynwood also argued that the court's decision was "predicated upon the assumption that the acts of Defendants' insurer somehow bound Defendants," an assertion it disputed. Glynwood maintained that its "insurer had no contractual rights because of its prior breach of the insurance contract when it abandoned its defense of [Glynwood] in the face of litigation." Glynwood requested "limited discovery regarding the facts that the court found to be relevant in reaching its decision."

On May 30, 2007, the superior court denied the motion for reconsideration, concluding that Glynwood had made "no showing that the court has overlooked or misconceived a material fact, a material question, or a proposition of law." The superior court's order also included a handwritten addendum reiterating that Glynwood was not the prevailing party and not entitled to attorney's fees:

> Moreover, the court's decision was based primarily on the fact that the plaintiffs, having received [$45,000] in consideration from defendants' insurer to settle the case, have moved to dismiss their case *with prejudice* against the defendants. As long as the dismissal is with prejudice, the court does not think it can require plaintiffs to continue litigating their claims. As recipients of substantial consideration in settlement, they are prevailing parties, or, to put the issue in context, defendants are *not* prevailing parties for purposes of obtaining an award of attorney's fees against plaintiffs. If defendants are concerned about their insurer's decision to settle the case, they need to take this issue up with their insurer in a different forum—not this case.

On September 6, 2007, the superior court entered its final judgment dismissing the tenants' claims with prejudice, denying prevailing party status to Glynwood, and declining to enter discovery sanctions against the tenants.

Glynwood appeals.

## III. STANDARD OF REVIEW

We review a superior court's determination of prevailing party status and attorney's fees for abuse of discretion.[4] The abuse of discretion standard also applies to review of the superior court's rulings on discovery issues.[5] We will find an abuse of discretion only where the record as a whole leaves us with a definite and firm conviction that a mistake has been made.[6]

---

3. Civil Rule 41 provides in pertinent part:
 (a)(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

4. *Olivit v. City & Borough of Juneau,* 171 P.3d 1137, 1142 (Alaska 2007).

5. *Stone v. Int'l Marine Carriers, Inc.,* 918 P.2d 551, 554 (Alaska 1996).

6. *Hopper v. Hopper,* 171 P.3d 124, 128 (Alaska 2007).

## IV. DISCUSSION

Glynwood presents two issues on appeal. First, Glynwood argues that it is the prevailing party and should therefore be awarded attorney's fees on remand. Second, Glynwood argues that it was an abuse of discretion for the superior court to deny sanctions for the tenants' failure to respond to discovery and for their failure to confer regarding their lack of discovery responses. We address these challenges in turn.

### A. The Superior Court's Entry of a Dismissal Without an Award of Fees Was Proper.

#### 1. The superior court did not abuse its discretion by refusing to place conditions on the dismissal.

 Alaska Civil Rule 82(a) provides that "the prevailing party in a civil case shall be awarded attorney's fees." Glynwood argues that because the tenants chose to dismiss their case with prejudice, Glynwood was the prevailing party and thus entitled to attorney's fees. Glynwood relies on case law that recognizes a dismissal with prejudice "as an adjudication on the merits" of a lawsuit.[7] Glynwood analogizes this case to our decision in *Bovee v. LaSage*, where the defendant was found to be the prevailing party and awarded attorney's fees after plaintiff Bovee's suit was dismissed with prejudice.[8] But Glynwood's reliance on *Bovee* is misplaced. In *Bovee*, we recognized that a plaintiff's dismissal with prejudice makes a prevailing party determination possible.[9] We have never held that a plaintiff's dismissal with prejudice automatically makes the defendant a prevailing party. Instead, as the tenants note, we have adopted a more common sense approach to determine prevailing party status: the prevailing party is the party who has "successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[10] "With few exceptions, the party who obtains an affirmative recovery is considered prevailing."[11] The tenants are also correct in noting that in *Bovee*, the police officer was declared to be the prevailing party not simply because Bovee had dismissed his case with prejudice, but because as a result of the dismissal the officer had prevailed on every claim in the lawsuit. In this case, the tenants received $45,000 in exchange for their dismissal and were therefore successful on the main issue of the action.

Glynwood further argues that the settlement agreement between its insurer and the tenants is "collateral" to the prevailing party issue. Glynwood relies on *Municipality of Anchorage v. Baugh Construction & Engineering Co.*[12] as instructive on the question whether payments by a collateral source influence a prevailing party determination. In *Baugh*, the Municipality of Anchorage contracted with Baugh to build a waste-shredding facility.[13] An explosion and fire severely damaged the facility, and the Municipality sued Baugh, asserting a number of claims including one for products liability.[14] The Municipality reached a settlement with the third-party defendant manufacturer of the equipment and then dismissed with prejudice its products liability claims against Baugh.[15] Because "the verdict was unequivocally in Baugh's favor," Baugh was declared the pre-

---

7. *Miller v. Johnson*, 370 P.2d 171, 173 (Alaska 1962). In addition, Glynwood argues that because this is landlord-tenant litigation, it is entitled to its full attorney's fees under AS 34.03.350.

8. 664 P.2d 160, 164 (Alaska 1983).

9. *Id.* at 164 n. 10 ("[A] dismissal with prejudice operates as an adjudication on the merits. Thus, it is *possible* to make a 'prevailing party' determination for purposes of applying Civil Rule 82 if a case is dismissed with prejudice pursuant to Alaska R. Civ. P. 41(a)(2)." (emphasis added) (citation omitted)).

10. *Alaska Ctr. for the Env't v. State*, 940 P.2d 916, 921 (Alaska 1997) (internal quotation marks omitted).

11. *Id.*

12. 722 P.2d 919 (Alaska 1986).

13. *Id.* at 921.

14. *Id.* at 922.

15. *Id.* at 922 n. 1.

vailing party and awarded attorney's fees.[16] Glynwood contends that it is the prevailing party and entitled to attorney's fees because, as in *Baugh*, the tenants dismissed their case against Glynwood with prejudice after settlement with a third party. But as the superior court correctly recognized, *Baugh* is distinguishable because while in *Baugh*, the settlement was reached with a third-party defendant, the settlement agreement in this case was reached with Glynwood's own insurer.

We have never endorsed such an inflexible definition of prevailing party as that advocated by Glynwood and instead have held that the prevailing party is the one who succeeds on the main issue of the case.[17] In addition, a party need not prevail on every issue to enjoy prevailing party status, nor need the party obtain formal judicial relief.[18]

The tenants requested that the superior court dismiss their case with prejudice under Civil Rule 41(a)(2). Civil Rule 41(a)(2) covers situations where dismissal is requested after the answer has been filed and the defendant has not stipulated to dismissal. In deciding a voluntary dismissal motion, Alaska courts balance the interests of "both the plaintiff and the defendant in the dismissal in order to obtain a result which will be fair and equitable under all the circumstances of the case."[19] But as the tenants have noted, federal courts have held that a plaintiff's motion for dismissal with prejudice must be granted.[20]

Voluntary dismissal with prejudice carries a heavy price for a plaintiff: unless the court has made some other provision, a dismissal with prejudice is subject to the rules of res judicata,[21] and one who acquiesces to a dismissal with prejudice waives the right to an appeal.[22] Legal commentators Charles Wright and Arthur Miller state that "[s]ince such a dismissal is a complete adjudication of the claims and a bar to a further action on them between the parties, it has been held that the [federal] district court has no discretion to refuse such a dismissal and cannot force an unwilling plaintiff to go to trial."[23]

Civil Rule 41(a)(2) also provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." In *Dome Laboratories v. Farrell*, we determined that this rule provides an independent basis for an award of attorney's fees.[24] In this case, the tenants voluntarily moved to dismiss their case with prejudice under Civil Rule 41(a)(2), stating that their action was necessary because Glynwood's counsel had "refus[ed] to sign off on any stipulation for dismissal." The superior court had the discretion to grant the dismissal on any conditions it found to be

16. *Id.* at 929.

17. *Halloran v. State, Div. of Elections*, 115 P.3d 547, 553 (Alaska 2005).

18. *Id.*

19. *Sherry v. Sherry*, 622 P.2d 960, 964 (Alaska 1981) (internal quotation marks omitted).

20. 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2367 (3d ed. 2008) ("If the plaintiff moves for an order under Rule 41(a)(2) for voluntary dismissal, specifically requesting that the dismissal be with prejudice, it has been held that the district court must grant that request."); *see also Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir.1964), *cert. denied*, 384 U.S. 909, 86 S.Ct. 1342, 16 L.Ed.2d 361 (1966) ("No case has been cited to us, nor have we found any, where a plaintiff, upon his own motion, was denied the right to dismiss his case with prejudice."); *Shepard v. Egan*, 767 F.Supp. 1158, 1165 (D.Mass.1990).

21. WRIGHT & MILLER, *supra* note 20, § 2367.

22. *See Singh v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1193, 1197 (Alaska 1993).

23. WRIGHT & MILLER, *supra* note 20, § 2364. Wright and Miller note that other federal courts have disagreed with that holding and have required court discretion in all cases. *Id.* However, in the cases requiring court discretion, the court was either concerned about prejudice to defendants because litigation was in an advanced stage or concerned about possible effects on third parties. *Id.; see also Hudson Eng'g Co. v. Bingham Pump Co.*, 298 F.Supp. 387, 389 (S.D.N.Y.1969). In the current case there are only two parties—the tenants and Glynwood—and despite a flurry of filings, the litigation had not progressed past discovery.

24. 599 P.2d 152, 160 (Alaska 1979).

just. Its choice to not impose conditions in this case was reasonable given that a global settlement had been reached in which Glynwood's own insurer paid the tenants $45,000. As the superior court recognized, the real issue in this case is between Glynwood and its insurance carrier.

### 2. The real dispute is between Glynwood and its insurance carrier.

Glynwood's arguments for prevailing party status and discovery sanctions are based on its refusal to acknowledge the settlement agreement between its insurer and the tenants. The real dispute in this case is between Glynwood and its insurer as to the coverage guaranteed by its policy.

The record on appeal reveals that Glynwood knew or should have known of the settlement between the tenants and its insurer at least two weeks before it moved to compel discovery: a filing by the tenants' attorney on January 17, 2007, informed the court that a global settlement had been negotiated with Glynwood's insurer on December 26, 2006. Yet a filing by Glynwood dated January 24, 2007, included an affidavit from Glynwood's counsel stating: "I have not had any settlement discussions with Plaintiffs or their attorneys. My clients have not agreed to any settlement of this case." A week later Glynwood filed its order seeking a motion to compel discovery and sanctions.

When asked about the settlement at the May 16, 2007 hearing, Glynwood's attorney answered, "I don't know that the insurer has paid or agreed to pay anything other than what I see in the pleadings." Glynwood's attorney also twice referred to a "secret agreement" between its insurer and the tenants. The tenants, in turn, claimed that Glynwood's attorney was made aware of the settlement agreement, yet refused to agree to the dismissal of the case even though it would have absolved his clients from any liability. At the hearing, the tenants' attorney stated, "as far as what we've heard from the insurance adjuster, they were in constant communication" with Glynwood's attorney during the settlement process.

We have not been provided with a copy of the settlement agreement. But the transcript of the hearing before the superior court indicates the tenants' attorney provided the court and Glynwood's attorney with copies of the settlement checks made payable to each of the tenants individually. It is thus puzzling that Glynwood continues to refer to the tenants' settlement as if it did not actually occur.[25]

The real dispute in this case is between Glynwood and its insurer. Under most liability insurance policies, the insured relinquishes to the insurer its right to settle claims and its right to control the litigation during the post-injury to pre-judgment period.[26] As the superior court remarked, "usually an insurance contract says that an insurance company retains the right to control the litigation and the insureds have an obligation to cooperate with the insurance company." There is no copy of Glynwood's insurance contract in the trial record.

Glynwood's insurer has settled with the tenants and fully indemnified Glynwood as to all the allegations in the tenants' complaint. Yet Glynwood maintains it has been "abandoned" by its insurer and has been forced to bear the costs of litigation. Glynwood put forth this argument at the May 16, 2007 hearing, arguing that this abandonment constitutes a breach of the insurance contract and that, as a consequence, its insurer has no right to settle on its behalf. But as the superior court recognized, the questions whether the insurance contract gave the insurance company the right to settle without the insured's consent and whether Glynwood was abandoned by its insurer were not capable of resolution within the context of the tenants' lawsuit: "I hear the argument, but

**25.** The appellants' brief refers to the settlement as "allegedly received monies" and "monies allegedly received by [the] [t]enants from Mr. Wooten and Mrs. [sic] Skan's insurer."

**26.** See Guin v. Ha, 591 P.2d 1281, 1290 (Alaska 1979); see also CHI of Alaska, Inc. v. Employer' Reinsurance Corp., 844 P.2d 1113, 1115–16 (Alaska 1993). In CHI, we recognized that an insured is entitled to an independent attorney to control the defense litigation after an irreconcilable conflict of interest between the insured and the insurer has appeared. Id. at 1120. Here, neither party explains why von Gemmingen was not retained as CHI counsel.

it's not a fact that I'm finding or I'm able to find today." As the trial court recognized, those issues can be "fully litigated" in a separate case between Glynwood and its insurer.

### 3. Awarding fees to Glynwood in this case would undermine public policy.

In addition to having little plausible basis in law, awarding attorney's fees against the tenants after they had settled their case would undermine public policy. As noted by the tenants, Glynwood's proposed rule, "whereby an insured defendant could be declared the prevailing party in a case where the defendant's insurer has agreed to a substantial settlement with the plaintiffs, would chill future settlements in Alaska and contravene well-settled public policy." We recently recognized:

> [T]here is a strong public policy in favor of the settlement of disputes. Settlements and settlement hearings facilitate communication and compromise; they encourage litigants to voluntarily resolve their disputes; and they simplify, shorten and settle litigation without taking up valuable court resources. Accordingly, private settlements and stipulations are to be favored and should not be lightly set aside.[27]

But if a defendant could be considered the prevailing party simply by refusing to accept a settlement negotiated by its insurer, this would force plaintiffs either to accept the settlement and risk being liable for the defendant's attorney's fees or to continue litigating the case after an acceptable resolution has already been reached.

We review a superior court's determination of prevailing party status and attorney's fees for abuse of discretion.[28] We will find an abuse of discretion only if the record as a whole leaves us with a definite and firm conviction that a mistake has been made.[29] Glynwood has not shown that the superior court abused its discretion in denying Glynwood prevailing party status. Furthermore, accepting Glynwood's arguments would lead to a decision that is contrary to the public policy in favor of settlement agreements. Accordingly, we affirm the judgment of the superior court.

### B. Glynwood Was Not Entitled to Discovery Sanctions.

 Glynwood argues that it was an abuse of discretion for the superior court to deny sanctions for the tenants' failure to respond to discovery and the tenants' failure to confer regarding their lack of discovery responses. Glynwood claims that by the time it moved to compel the tenants' discovery responses, the responses were five months overdue and that the tenants also ignored Glynwood's efforts to discuss the matter. We review a superior court's rulings on discovery issues for abuse of discretion.[30] We will find an abuse of discretion only if the record as a whole leaves us with a definite and firm conviction that a mistake has been made.[31]

Under Civil Rule 37(a)(4)(A),[32] sanctions are appropriate in two situations: when the motion to compel is granted or the requested discovery is provided after the motion is filed. Neither situation took place here. Although it did not provide the reasons for its

27. *Mullins v. Oates*, 179 P.3d 930, 937 (Alaska 2008) (internal quotation marks and citations omitted).

28. *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1142 (Alaska 2007).

29. *Hopper v. Hopper*, 171 P.3d 124, 128 (Alaska 2007).

30. *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999).

31. *Hopper*, 171 P.3d at 128.

32. Civil Rule 37(a)(4)(A) provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, *unless* the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, *or* that the opposing party's nondisclosure, response or objection was substantially justified, *or* that other circumstances make an award of expenses unjust. (Emphasis added.)

denial, the superior court could have found that the tenants' alleged nondisclosure was substantially justified because they had entered into a settlement agreement with Glynwood's insurer and understood that Glynwood was aware of the negotiations. Alternatively, the superior court could have found that other circumstances, such as the settlement of the case, made discovery unnecessary and an award of discovery sanctions unjust.

Glynwood cites Civil Rule 37(a)(4)(A) and argues that it is entitled to the $1,440 spent to prepare the motion to compel, filed on January 30, 2007. But as the tenants correctly note, Glynwood's motion to compel was moot because the settlement agreement had already been reached between the tenants and Glynwood's insurer. Glynwood's counsel conceded this point at oral argument on October 7, 2008: Glynwood's counsel agreed that it would not have been an abuse of discretion for the superior court to deny the motion to compel and the motion for sanctions if those motions were filed after the plaintiffs had notified the court and Glynwood that a settlement had been reached and that they would be dismissing their case with prejudice. This is, in fact, exactly what happened. On January 17, 2007, the tenants notified the court and Glynwood's counsel of the settlement with Glynwood's insurer when they filed their opposition to Glynwood's motion to consolidate. A week later Glynwood filed its motion to compel discovery and for sanctions. Glynwood has thus failed to show the superior court abused its discretion in denying discovery sanctions.

## V. CONCLUSION

Because the superior court acted well within its discretion, because accepting Glynwood's arguments would lead to a decision that is contrary to the policy in favor of settlement agreements, and because the real dispute in this case is between Glynwood and its insurance carrier, we AFFIRM the judgment of the superior court.

EASTAUGH, Justice, not participating.