# In the Supreme Court of the State of Alaska

Ronald V. Weilbacher, )
) Supreme Court No. S-14180
    Appellant, )
)
v. ) **Order**
) Petition for Rehearing
Floyd Ring, Sandra Ring, )
Wade Henry and Jane Henry, )
)
    Appellees. ) Date of Order: 4/8/2013

Trial Court Case # 3KN-07-00283CI

Before: Winfree, and Stowers, Justices, and Matthews and Carpeneti, Senior Justices.* [Fabe, Chief Justice, Maassen and Bolger, Justices, not participating.]

On consideration of appellant's Petition for Rehearing filed on **3/18/2013**,

IT IS ORDERED:

1.    The Petition for Rehearing is **GRANTED** in part.

(a)    The first paragraph of page 19 of the opinion is modified to read as follows:

> Weilbacher challenges the award of enhanced fees only on the ground that he had no viable claim against Berube following the trial court's ruling on the owners' association's summary judgment motion. He argues that his conduct was not vexatious because the court's joinder order was unjustified. As we have already concluded that the court properly ordered Berube's joinder as an indispensable party, this argument fails.

(b)    The second paragraph of page 19 of the opinion is deleted.

Weilbacher v. Ring
Supreme Court No. S-14180
Order of April 8, 2013
Page Two

2. In all other respects the Petition for Rehearing is **DENIED**.

Entered by direction of the court.

Clerk of the Appellate Courts

*Marilyn May*

Marilyn May

cc: Supreme Court Justices
Judge Ashman
Trial Court Appeals Clerk/Kenai
Publishers

Distribution:

Kenneth W Legacki
Attorney at Law
425 G St Ste 920
Anchorage AK 99501

George M Kapolchok
Kapolchok Law Offices LLC
360 K St Ste 100
Anchorage AK 99501

*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER, ) | |
| ) | Supreme Court No. S-14180 |
| Appellant, ) | |
| ) | Superior Court No. 3KN-07-00283 CI |
| v. ) | |
| ) | O P I N I O N |
| FLOYD RING, SANDRA RING, ) | |
| WADE HENRY, and JANE HENRY, ) | No. 6757 – March 8, 2013 |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Charles T. Huguelet, Judge, and Peter G. Ashman, Judge pro tem.

Appearances: Kenneth W. Legacki, Anchorage, for Appellant. George M. Kapolchok, George Kapolchok Law Offices, Inc., Anchorage, for Appellees.

Before: Carpeneti, Chief Justice, Winfree, and Stowers, Justices, and Matthews, Senior Justice.[*] [Fabe, Justice, not participating.]

MATTHEWS, Senior Justice.

---

[*]      Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

This case involves a three-way transfer of boat tie-up spaces in a recreational subdivision. The main issue is whether the court erred in requiring the joinder of one of the people involved in the transfer as an indispensable party. We conclude that the court did not err because appropriate relief could not be afforded in the absence of the person in question. We also conclude that the case was properly dismissed because the plaintiff refused to comply with the court's order requiring joinder.

## II.    FACTS

Poachers Cove Subdivision is a planned unit development organized under Alaska's Uniform Common Interest Ownership Act.[1] It is comprised of both recreational lots and "guide lots." Each guide lot is allotted two tie-up spots for boats. Some of the tie-up spots are directly on the Kenai River and others are in a lagoon.

In 1999 appellant Ronald Weilbacher owned guide lots 71, 72, and 74. In the owners' association records tie-ups 26 and 48 were designated for lot 71; 27 and 47 were designated for lot 72; and 24 and 79 were designated for lot 74. Weilbacher decided to sell lots 71 and 72 but he wanted to keep tie-up 26 because it was on the Kenai River next to a boat launch ramp and in his view this location was especially desirable. Weilbacher sold lots 71 and 72 and attempted to reallocate the tie-ups associated with these lots and the lot he retained in transactions that ultimately led to the litigation in this case.

On August 6, 1999, Weilbacher sold lot 71 to appellees Floyd Ring, Sandra Ring, Wade Henry, and Jane Henry for a cash sum of $25,000. All parties agreed that the Ring/Henrys would receive tie-up spots 27 and 48, and the escrow instructions

---

[1]    AS 34.08.010 et seq.

signed by Weilbacher and the Ring/Henrys so state. On September 2, 1999, Weilbacher sold lot 72 to Edward Berube for $40,000. The parties agreed that Berube would receive tie-up spots 79 and 48; the escrow instructions signed by Weilbacher and Berube reflect this agreement, as does the warranty deed.

The fact that tie-up space 48 appears to have been conveyed twice by Weilbacher is not the source of the controversy in this case. According to Weilbacher, after the sale to the Ring/Henrys but before the sale to Berube, Sandra Ring asked if they could have tie-up 47 rather than tie-up 48 (both were side-by-side in the lagoon). Weilbacher agreed. According to Weilbacher, Sandra Ring said she would take care of the change with the owners' association and he assumed that this had been accomplished at the time he made the sale to Berube. The Ring/Henrys used tie-up 47 and Berube used tie-up 48 until 2008 when a representative of the owners' association said that the Ring/Henrys should use tie-up 48 and Berube should use tie-up 47 so that the actual use of these tie-ups would be consistent with the association records. Berube and the Ring/Henrys made the switch and apparently regard it as inconsequential.

What did prove to be of consequence was the attempted reallocation of tie-up 26 from lot 71 to lot 74. Despite the agreement of the Ring/Henrys that they would receive tie-up 27 rather than tie-up 26 with their purchase of lot 71, the owners' association records were never changed to reflect this agreement. Weilbacher testified that he thought that the Ring/Henrys would take care of notifying the association board concerning the tie-up reallocation. Floyd Ring testified that he asked Weilbacher to go to the board with him on the morning of the sale to get approval of the tie-up change but Weilbacher declined. Wade Henry, who was an officer and board member of the owners' association, testified that it was his understanding that if a switch was necessary, Weilbacher was responsible for making the switch before selling the lot. Mr. Henry further testified that he "was unaware that we were not getting . . . the slot that was

originally assigned to lot 71." The owners' association records were also not changed with respect to the tie-ups for lot 72 that Weilbacher and Berube agreed to.

Soon after Berube purchased lot 72 he began using tie-up 27, evidently because he discovered that tie-up 27 was still allocated to lot 72 in the owners' association records. Because Berube parked in tie-up 27, the Ring/Henrys used tie-up 26 in 1999 and 2000. In 2001 Weilbacher began parking at tie-up 26. This left the Ring/Henrys without access to a river tie-up. Sandra Ring wrote to the board requesting that the board resolve the conflict. Following numerous similar requests, the board met with the Ring/Henrys and Weilbacher on August 29, 2006. After reviewing documents submitted by Weilbacher and Sandra Ring the board decided that tie-up 26 would remain assigned to lot 71. The minutes of the board meeting state that a letter would be sent containing the following decision:

> Boat Slip 26 is assigned to Lot 71 per the drawing entitled "Poachers Cove Boat Slip Assignments for Along the River Front" and which was prepared for Poacher's Cove Associates by Charles Forbes and [sic] 4/19/90. Past PCOA Boards of Directors have never approved assignment of Slip 26 to any other lot as required by PCOA rules requiring two signatures of parties making a transfer. Board records currently indicate that Slip 26 is assigned to Lot 71. The Board reaffirms that Boat Slip 26 is assigned to Lot 71.

The letter was sent and this suit followed.

## III. PROCEEDINGS

On April 6, 2007, Weilbacher filed a complaint in the Kenai superior court against the owners' association and the Ring/Henrys. Weilbacher's claim for relief against the Ring/Henrys sought rescission of the sale of lot 71 based on mistake. His claim against the owners' association was for maliciously interfering with the sales contract between Weilbacher and the Ring/Henrys by ordering Weilbacher to give tie-up

-4- 6757

26 to the Ring/Henrys. The only explicit relief sought by Weilbacher against the owners' association was, as an alternative to rescinding the sales contract, an order that the owners' association rescind its action reaffirming that tie-up 26 was allocated to lot 71. Weilbacher also requested costs and attorney's fees and included a catch-all request for "such other and further relief as the [c]ourt deems equitable and just."

The owners' association and the Ring/Henrys answered, generally denying that Weilbacher had any right to relief. In addition, the Ring/Henrys pled a counterclaim alleging that Weilbacher sold lot 72 to an innocent third party and included in that sale tie-up 27 even though he had already transferred tie-up 27 to the Ring/Henrys. The counterclaim alleged that Weilbacher committed fraud and misrepresentation in transferring slip 27 twice causing loss of use damage to them. Weilbacher answered the counterclaim denying its material allegations.

After some discovery the owners' association moved for summary judgment. The essence of the association's motion was that the association, not individual property owners, owns the tie-ups and controls their allocation; therefore Weilbacher had no authority to transfer them. The association in its memorandum supporting its motion for summary judgment referred to a February 1988 letter sent by Poachers Cove developer and then-president Dave Keating, who wrote that "tie-ups will pass with the sale of any lot to a new owner" and explained that "if anyone wishes to trade on tie-up locations, we will accept a letter stating the swap, and will require both signatures of the lot owners of . . . record." The association's legal theory was:

> Because the tie-ups are common elements, and not part of the [o]wners' "property," only [the association] has the authority to assign and transfer the use rights. Accordingly, Weilbacher had no authority to transfer "ownership" of the tie-ups by deed or otherwise, and his attempt to do so is void.
>
> . . . .

. . . Because Weilbacher could not have legally contracted to transfer ownership of the tie-ups, he cannot prevail against [the association] on a claim for intentional interference with a contract purporting to do so.

Weilbacher opposed the association's motion for summary judgment. He argued primarily that at the time of the sale tie-ups were freely exchanged between lot owners and all that was required was notice to a board member rather than board approval.

While the association's motion for summary judgment was pending the association moved for the joinder of Edward Berube claiming that Berube was an indispensable party without whom the case could not be properly adjudicated. The Ring/Henrys joined in this motion and Weilbacher opposed it.

The trial court granted the association's motion for summary judgment. The court reasoned that the contract to transfer the boat tie-ups was invalid because it "conveys an interest in boat tie-ups [Weilbacher] did not have." Since the contract was not valid, it could not be interfered with. Subsequently the court ruled that there were no remaining claims against the association and dismissed the association from the suit.

The court also determined that Berube was an indispensable party and ordered Weilbacher to join Berube within 15 days. Weilbacher moved for reconsideration of this order claiming that he could not in good faith bring a claim against Berube in light of the court's finding that the contract between Weilbacher and the Ring/Henrys was void. This motion was denied by operation of law because it was not ruled on by the superior court within the applicable 30-day period prescribed by Alaska Civil Rule 77(k)(4). Weilbacher did not comply with the order to join Berube and Berube was not made a party to the case.

Weilbacher moved for summary judgment on the issue of rescission. He contended that since the court ruled that the contract concerning lot 71 was not a valid

contract the only alternative was rescission. The superior court denied this motion ruling that the court had only "invalidated or voided" the portion of the contract concerning reallocation of the boat tie-ups, not the sale of the lot.

In July 2010 the superior court held a three-day trial. In his pretrial brief Weilbacher argued that the Ring/Henrys had breached the sales contract by asking the board to change the boat tie-up assignments contrary to the sales agreement. He requested that the Ring/Henrys "should at least be equitably estopped from taking over boat tie-up 26, or the contract should be rescinded if they are not happy with the boat slip assignments agreed to at the time of the sale . . . ." The Ring/Henrys in their trial brief noted that they had abandoned their counterclaim, and argued that there were no grounds for rescission of the transaction with Weilbacher based on mutual mistake.

At the trial Weilbacher continued to press for enforcement of the contract with respect to the tie-ups. He concluded his opening statement defining the issues for trial as follows: "So the question is, Your Honor, is do we get 26 when we leave here or do we get the land back. It's their call. Are they going to — because under Alaska law when the parties have a contract the Court is to give the expectations of the contract."

At the conclusion of the trial the court in a five-page decision declined to enforce the tie-up allocation agreed to by the parties because Weilbacher had refused to make Berube a party to the case. The court also declined to rescind the contract because Weilbacher had failed to follow the owners' association procedures for transferring tie-ups.

The court wrote, in relevant part:

> Boat tie-ups #26 and #27 are favored boat slips because they are located next to the boat ramp and public parking. Mr. Weilbacher wanted #26 because it was the first

slip off the boat ramp, and he believed it would benefit his guide business.

. . . .

Mr. Weilbacher agreed to sell the Rings/Henrys a lot with a favored tie-up. The tie-up was assigned to another lot . . . conveyed to Mr. Berube. Testimony showed that Mr. Weilbacher should/could have approached the Poacher's Cove Owners Association and requested that the tie-ups be allocated pursuant to his plan before the transactions to transfer the lots. If the Poacher's Cove Owners Association had approved the boat tie-up transfers from one lot to another, Mr. Weilbacher could have conveyed tie-up #27 to the Rings/Henrys with lot 71. Mr. Weilbacher did not approach the Poacher's Cove Owners Association prior to the sale and tried to reallocate the tie-ups that he did not own with escrow documents. When faced with Mr. Berube's claim to #27, Mr. Weilbacher expected the Rings/Henrys to fight it out with Mr. Berube and Poacher's Cove Owners Association.

At trial, Mr. Weilbacher continued to argue that the boat tie-ups should be allocated according to the escrow agreements. He argued that if the tie-ups were allocated according to the escrow documents, he would still have no duty to remove or even speak to Mr. Berube — it would be up to the Rings/Henrys to enforce their interest in tie-up #27. He continued to assert that if the escrow documents failed to transfer the tie-ups (as determined by the court on summary judgment), the entire agreement should be invalidated, and the Rings/Henrys should return lot 71 with tie-up #26 to him.

Mr. Weilbacher tried to keep #26 and convey #27, but failed to follow . . . Poacher's Cove Owners Association procedures for transferring boat tie-ups. In effect, he conveyed #26 to the Rings/Henrys and #27 to Mr. Berube. The court cannot determine or take action to enforce the intent of all the parties to the transaction because Mr. Weilbacher stubbornly refused to bring Mr. Berube into the

lawsuit. The essence of the contract between Mr. Weilbacher and the Rings/Henrys, however, was for the sale of a lot with a favored tie-up. There is no reason to rescind the contract 11 years later because Mr. Weilbacher failed to take steps to keep tie-up #26 for himself. Judgment is entered on behalf of the defendants.

Following the trial court's decision the case was reassigned from the Honorable Charles T. Huguelet, Superior Court Judge, to the Honorable Peter G. Ashman, Superior Court Judge pro tem. The Ring/Henrys requested a fee award of $31,900 which was 50 percent of their actual attorney's fees. This was an enhancement over the normal 30 percent of actual attorney's fees that would be awarded for a successful defense.[2] The Ring/Henrys contended that the enhanced fees were justified because, among other reasons, Weilbacher had refused to join Berube. Weilbacher opposed this motion, but it was granted. Judge Ashman found that Judge Huguelet's reference to Weilbacher's "stubborn refusal" to join Berube "constitutes a finding that plaintiff engaged in bad faith or vexatious conduct."

## IV. DISCUSSION

On appeal Weilbacher presents six issues for review. They are, as expressed in his brief:

> 1. The trial court erred in ordering the joinder of Edward Berube as an indispensable party to the lawsuit after the court ruled that the clause at issue in both contracts was void as a matter of law.
>
> 2. The Rings/Henrys, after executing the contract and undertaking a course of action to undermine the consideration of the contract, breached the contract, justifying rescission of the contract.

---

[2] *See* Alaska R. Civ. P. 82(b)(2).

3. The Rings/Henrys, after executing the contract and then seeking to have the court void the consideration in the contract, breached the contract, mandating rescission of the contract.

4. The contract should have been rescinded because there was a mutual mistake when the parties believed the boat slips could be reassigned by Ronald Weilbacher.

5. The trial court erred in referring to evidence that was nonexistent before the court at trial.

6. The trial court erred in granting enhanced attorney fees because Ronald Weilbacher could not bring Edward Berube in as an indispensable party when the court voided the material clause in the contract to be enforced against him.

## A. Standard Of Review

The issues presented on this appeal involve questions of law, findings of fact, and discretionary decisions of the superior court. This court reviews questions of law using its independent judgment.[3] Determinations of fact are reviewed deferentially. The findings of the trial court must stand unless they are clearly erroneous.[4] An Alaska Civil Rule 82 award of attorney's fees is reviewed for abuse of discretion.[5] Abuse of discretion exists "if the award is arbitrary, capricious, manifestly unreasonable or the result of an improper motive."[6] To the extent that an award of enhanced fees involves

---

[3] *Skaflestad v. Huna Totem Corp.*, 76 P.3d 391, 395 (Alaska 2003).

[4] *Id.*

[5] *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007).

[6] *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 793 (Alaska 1997).

a determination of the merits of a litigation position, we review the legal merits de novo and any underlying relevant findings of fact for clear error.[7]

**B.    The Court Did Not Err In Ordering The Joinder Of Berube As An Indispensable Party.**

Under Alaska Civil Rule 19(a) a person should be joined as a party if "in the person's absence complete relief cannot be accorded among those already parties . . . ." Under subsection (b) of Rule 19 if a person who should be joined under Rule 19(a) cannot be made a party, the court should determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."[8]

---

[7]    *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010).

[8]    Civil Rule 19(a) & (b) provides:

(a)    **Persons to Be Joined if Feasible.**  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been joined, the court shall order that the person be made a party.  If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.  If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(continued...)

Weilbacher's argument that Berube was not an indispensable party is encompassed in the following paragraph in his brief:

> If the trial court had *not* ruled in favor of Poachers Cove and the Rings/Henrys on their motion for summary judgment that Mr. Weilbacher did not have the authority to reassign boat slips, then Mr. Berube would have been an indispensable party. However, once the trial court ruled that the PCOA Board had the ultimate authority to assign boat slips, and Mr. Weilbacher did not, then the clause assigning boat slips in the sales contracts for Lots 71 and 72 thereby became void and nonenforceable. There was no longer any cause of action that could be enforced against Mr. Berube. (Emphasis in original.)

The premise of Weilbacher's argument is that because the board had ultimate authority to approve or disapprove the transfer of tie-ups the contracts reassigning tie-ups that he had made with the Ring/Henrys and Berube were meaningless and incapable of enforcement. But this premise is false. Merely because a third party

---

[8]    (...continued)

   (b)    **Determination by Court Whenever Joinder Not Feasible.** If a person as described in subsection (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

must approve of a transfer of a privilege does not mean that a contract to transfer the privilege is unenforceable.[9] Many privileges (liquor licenses, taxi permits, or limited entry fishing permits are familiar examples) may be transferred only upon approval of a government agency. Yet contracts for their transfer are enforceable, conditioned on third-party approval of the transfer.[10] Often such approval may not be arbitrarily

---

[9] While the trial court at times used language of voidness and invalidity to describe the assignment of boat slips in the original contract, the trial court also required the joinder of Berube. Weilbacher is correct that if the clause assigning the boat slips was simply void or invalid, the joinder of Berube would have been unnecessary. But here the trial court required the joinder of Berube precisely because his presence in this action was necessary "to enforce the intent of all the parties." The trial court's finding that Berube was an indispensable party should have served as notice to Weilbacher that the contract could be enforced with respect to the boat slips, subject to the approval of the board.

[10] *See, e.g., Watson Bros. Transp. Co. v. Jaffa,* 143 F.2d 340 (8th Cir. 1944):

> But a man's obligation under his lawful contract is not a whit less binding upon him because of the fact that an approval of the transaction must be had before the party to whom he has obligated himself can receive full benefits. . . . The mere fact that a contract or transfer is subject to the approval of a public agency is not a bar to a decree compelling a party to execute the documents necessary for the consummation of the contract or transfer. This principle is well established in cases involving agreements to transfer liquor licenses, which, like the transfer in question here, must be validated by the licensing authority, . . . in cases involving the sale of a stock exchange seat where the transfer is subject to the approval of a committee of the exchange, . . . in cases involving the transfer of a license to a market stall, where a request to the city authorities is required for reissue of the license, . . . and where sale of a common carrier franchise is subject to the approval of the state and federal commissions
> . . . .

(continued...)

withheld, or is subject to defined standards.[11]

Board members and officers of a common ownership association have a fiduciary relationship with unit owners.[12] They are required to act reasonably with respect to owners.[13] Thus board approval of the transfer of tie-up spaces between unit owners could not have been unreasonably or arbitrarily withheld. In addition, the evidence showed that the board had never disapproved of a proposed boat tie-up transfer that was properly presented and that the board's primary interest in requiring approval was to ensure accurate record keeping in order to avoid confusion.[14]

Berube was an indispensable party under Rule 19 because without his joinder the apparent intent of the contracting parties with respect to the transfer of the tie-ups in the two contracts could not be enforced. What Weilbacher intended was a three-way swap of the tie-ups. As already noted, lot 71 would get lot 72's tie-up, No. 27. Lot 74 would get lot 71's tie-up, No. 26. And lot 72 would get lot 74's tie-up, No. 79.

---

[10]    (...continued)
*Id.* at 346-47 (citations omitted).

[11]    *See, e.g., Simonds Chevrolet v. Gen. Motors*, 564 F. Supp. 151 (D. Mass 1983) (reviewing for reasonableness franchisor auto manufacturer's decision to withhold consent to franchisee's sale of auto dealership); *Richmond Coll. v. Scott-Nuckols Co.*, 124 Va. 333 (Va. 1919) (installer of water and sewer systems excused from contractual requirement to produce architect's certificate where certificate was capriciously or arbitrarily withheld).

[12]    *See* AS 34.08.330(a); *Bennett v. Weimar*, 975 P.2d 691, 692-93 (Alaska 1999). *Cf. Dunlap v. Bavarian Vill. Condo. Ass'n*, 780 P.2d 1012, 1015 (Alaska 1989) (claim of arbitrary and selective enforcement by association reviewed).

[13]    *Bennett*, 975 P.2d at 697.

[14]    A board member described the board's role in the approval process as virtually a "rubber stamp."

Although the essential features of this three-way swap were reflected in the signed escrow instructions for the sale of lots 71 and 72, Berube refused to abide by the agreement and insisted on using tie-up 27. He contended that he had purchased tie-up 27. In order to accomplish Weilbacher's goal of retaining tie-up 26, the Ring/Henrys would have to receive their bargained-for tie-up 27. But for them to receive No. 27, Berube would have to give it up and take No. 79 instead. Berube could not be required to give up No. 27 without being made a party. Although what he agreed to seems clear as reflected by the escrow instructions and the deed, it is possible that Berube might have a defense, and it is clear that he had to be afforded an opportunity to be heard before he could be ordered to comply with the agreement. Thus joining Berube was necessary in order to enforce the expectations of the contracting parties.

Weilbacher argues that he had no claim against Berube and thus could not sue him. This has no merit. Weilbacher could have filed a claim against Berube that alleged the terms of the sale of lot 72 as to the tie-ups, and that Berube had breached those terms by failing to accept tie-up 79 and instead had claimed tie-up 27. The claim could allege that this not only violated the sale agreement, it also interfered with the sale agreement between Weilbacher and the Ring/Henrys under which the Ring/Henrys were to receive tie-up 27.

If Berube had been brought in under such a claim, and the sale as to the tie-ups was ultimately shown to be in accordance with the escrow instructions and Berube's deed, the court could have ordered the parties to submit the proper forms required by the owners' association to accomplish the three-way swap of boat tie-ups. If the parties had submitted the proper forms, there is little doubt but that the association would have approved the swap.

The superior court ordered Weilbacher to join Berube within 15 days. Weilbacher timely sought reconsideration of this order. When reconsideration was denied Weilbacher was required to join Berube or suffer dismissal for noncompliance:

> If the court finds an absentee is needed for a just adjudication (that is, a necessary or "required" party), and if [the] court also finds that joinder of the absentee is feasible, it will usually give the plaintiff an opportunity to add the absentee. If the plaintiff fails to do so, the court may dismiss the action because of the plaintiff's noncompliance. If it does not, the court itself must order that the person be made a party. The Rule gives no discretion on this point.[15]

We conclude that the court properly ordered Berube to be joined as an indispensable party under Civil Rule 19(a). When Weilbacher failed to comply with the court's order, dismissal of the case was justified. The fact that this dismissal took place at the close of the trial rather than before the trial is not of consequence. Either way dismissal would be justified. Hearing the testimony at the trial confirmed the conclusion implicit in the court's Rule 19 order that without Berube the court could not "determine or take action to enforce the intent of all the parties to the transaction."

## C. Weilbacher Was Not Entitled To Rescission.

Weilbacher's second, third, and fourth statement of issues presented for review claim that he was entitled to rescission of the Ring/Henrys contract based on a

---

[15] 4 MOORE'S FEDERAL PRACTICE § 19.04(4)(a) (3d ed. 2012) (citations omitted). *See also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604, p. 66 (3d ed. 2001):

> Once it has been decided that a person whose joinder is feasible should be brought into the action, the claimant should be given a reasonable opportunity to add that person. If plaintiff fails to do so, the court should order joinder itself or it may direct the action to be dismissed for noncompliance with the original order.

breach on the part of the Ring/Henrys or on mutual mistake. These claims have no merit for several reasons.

First, Weilbacher's rescission claim need not be reached because dismissal of Weilbacher's claim was justified based on his refusal to comply with the court's order requiring him to join Berube as an indispensable party.[16]

Second, the court did not find that the Ring/Henrys breached the contract or that there was a mutual mistake justifying rescission. The court instead found that there was no reason to rescind the contract.

Finally, even if there had been a mutual mistake, rescission would have been inappropriate because relief that enforced the parties' intent was available. In such circumstances the remedy of rescission would have been, to use the words of the Second Restatement of Contracts, "unnecessary and unavailable."[17]

## D. The Court's Evidentiary Error Was Harmless.

Weilbacher contends that the court erred by relying on a letter that was not admitted into evidence. The letter in question was written by the secretary of the owners' association in 2003. It was addressed "to whom it may concern" and stated that

---

[16]     *See supra* pp. 18-19.

[17]     *See* RESTATEMENT (SECOND) OF CONTRACTS § 152(2), cmt. d and introductory note (1981) (where the intent of the parties may be enforced by reformation contract avoidance is unnecessary and unavailable). *See also Rash v. United States*, 360 F.2d 940, 944 (Ct. Cl. 1966) ("[W]here reformation is possible, it is the only remedy permissible, since the mistake of the parties related to their expression only, and a rescission of the contract would be an unnecessary violation of their intent."). *Cf. Commercial Recycling Ctr. v. Hobbs Indus.*, 228 P.3d 93, 98-99 (Alaska 2010) (" '[A]s a matter of judicial policy,' we seek to 'maintain and enforce contracts, rather than enable parties to escape from the obligations they have chosen to incur.' " (quoting *Inman v. Clyde Hall Drilling Co.*, 369 P.2d 498, 500 (Alaska 1962))).

boat slip 26 was allocated to the owners of lot 71, the Ring/Henrys. As such, the letter merely reflected the uncontested fact that the original allocation of tie-up 26 as reflected in the association records for the 1999 sales was never changed in the board records. As this is an established fact in the present case the court's mention of the letter in question in its decision is harmless error.

E.   **The Court Did Not Abuse Its Discretion In Awarding Enhanced Attorney's Fees.**

Following the entry of judgment on the merits the Ring/Henrys filed an attorney's fees motion seeking enhanced fees under Civil Rule 82(b)(3) based, among other reasons, on Weilbacher's refusal to join Berube. Judge Ashman awarded enhanced fees. The order noted that Judge Huguelet "cited [Weilbacher's] stubborn refusal to obey the court's order as having frustrated the meaningful progress of the litigation." The court concluded that Judge Huguelet had in essence found that Weilbacher engaged in "bad faith or vexatious conduct" justifying an enhanced fee under Civil Rule 82(b)(3).[18]

---

[18]   Civil Rule 82(b)(3) provides:

> (3)   The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
> (A)   the complexity of the litigation;
> (B)   the length of trial;
> (C)   the reasonableness of the attorneys' hourly rates and the number of hours expended;
> (D)   the reasonableness of the number of attorneys used;
> (E)   the attorneys' efforts to minimize fees;
> (F)   the reasonableness of the claims and defenses pursued by each side.
> (G)   vexatious or bad faith conduct;

(continued...)

Weilbacher challenges the award of enhanced fees only on the ground that he had no viable claim against Berube following the trial court's ruling on the owners' association's summary judgment motion. He argues that his conduct was not vexatious because the court's joinder order was unjustified. As we have already concluded that the court properly ordered Berube's joinder as an indispensable party, this argument fails.

## V.   CONCLUSION

This is an unusual case. By all appearances if Weilbacher had joined Berube he could have won, not on his rescission claim, but by enforcing the expectations of the parties. Why he did not join Berube is difficult to understand. But once Weilbacher refused to join Berube as ordered by the court the litigation became an exercise in futility. For the reasons stated the judgment of the superior court is AFFIRMED.

---

[18]   (...continued)

(H)   the relationship between the amount of work performed and the significance of the matters at stake;

(I)   the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J)   the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K)   other equitable factors deemed relevant.