*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARJORIE ACHMAN, on behalf of CHARLES T. KEMP III, | ) ) ) | Supreme Court No. S-14830 |
| Appellant, | ) ) | Superior Court No. 4FA-10-01463 CI |
| v. | ) ) | O P I N I O N |
| STATE OF ALASKA, | ) ) | No. 6909 - May 9, 2014 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Jason A. Weiner, Gazewood & Weiner, P.C., Fairbanks, for Appellant.  Susan M. West, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before:  Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

I.      INTRODUCTION

        Charles Kemp attempted suicide while in administrative segregation at the Anchorage Correctional Complex.  He survived but suffered a serious brain injury.  His mother, Marjorie Achman, sued the Alaska Department of Corrections (DOC), alleging both a negligent failure to protect Kemp from self-harm and medical malpractice.  The

superior court granted summary judgment to DOC and awarded attorney's fees to DOC as the prevailing party. Achman appeals; we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Charles Kemp was arrested for vehicle theft on January 13, 2008, and jailed at the Anchorage Correctional Complex. He initially gave a false name, but DOC soon identified him through his fingerprints and discovered that he was in violation of conditions of his parole. He was retained at the jail.

On March 11 or 12, Kemp was sent to administrative segregation for fighting with another inmate. On March 29, while still in segregation, he attempted suicide. Corrections officers found him unconscious in his cell. They performed CPR until emergency medical personnel arrived and transported him to Alaska Regional Hospital, where he was diagnosed with an anoxic brain injury.

Kemp remained in the hospital until April 15, when he was discharged and returned to the medical segregation unit at the Anchorage Correctional Complex. DOC Medical Director Dr. Rebecca Bingham discussed Kemp's case with his treating physician, then authorized further evaluations and therapy. DOC also assigned Kemp a 24-hour caregiver.

On May 2, Kemp was returned to the general population, though he continued to have the assistance of the 24-hour caregiver. On May 8 he was returned to administrative segregation after he stuck his finger in another inmate's food and acted aggressively. He claimed not to remember these events when interviewed the next day by a mental health clinician; the clinician recommended that Kemp be moved to the mental health unit, and he was.

Kemp was released from DOC custody on bail on May 16, 2008. He now lives with his mother and stepfather in White Plains, Missouri. Because of his brain injury, he cannot live independently.

**B.      Proceedings**

Kemp's mother, Marjorie Achman, sued the State of Alaska, alleging that DOC was negligent in failing to protect Kemp from self-harm and in failing to provide necessary medical care after his suicide attempt. DOC moved for summary judgment. It presented evidence, including the affidavits of two DOC physicians, that Kemp's suicide attempt was not reasonably foreseeable and that DOC provided proper medical care after Kemp's discharge from the hospital. Achman's initial opposition presented no evidence but simply argued that negligence actions generally are not susceptible to summary judgment; she predicted that "specific facts will be revealed that will show that there is a genuine issue for trial." In a supplemental opposition, however, Achman presented the affidavit of Jeff Eiser, an expert in "contemporary corrections industry standards and practices," and an affidavit and excerpts from the deposition of Dr. Carl Orfuss, a physician who had also been retained as an expert. The supplemental opposition asserted that there were genuine issues of material fact as to whether DOC had violated its own policies requiring at least daily medical visits to prisoners in segregation, whether Kemp had received adequate mental health screening before his suicide attempt, and whether he had received adequate medical care afterwards. In a supplemental reply, DOC presented an affidavit from the jail's nursing supervisor, who attested that Kemp had received medical visits at least twice daily while in segregation.

The superior court granted DOC's motion for summary judgment. Achman filed a motion for reconsideration, which the superior court denied. The court then awarded DOC, as the prevailing party, $24,297.49 in attorney's fees and $6,539.74 in

costs but stayed the judgment pending appeal. Achman appeals the grant of summary judgment and the award of attorney's fees.

## III. STANDARDS OF REVIEW

"We review a grant of summary judgment de novo."[1] "We review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor."[2] We will affirm a grant of summary judgment "when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law."[3]

We review an award of Rule 82 attorney's fees for abuse of discretion.[4] An abuse of discretion exists if the award "is arbitrary, capricious, manifestly unreasonable or the result of an improper motive."[5]

## IV. DISCUSSION

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a

---

[1]   *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013) (citing *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011)).

[2]   *Id.* (citing *Fraternal Order of Eagles*, 254 P.3d at 352).

[3]   *Id.* (quoting *Fraternal Order of Eagles*, 254 P.3d at 352) (internal quotation marks omitted).

[4]   *Weilbacher v. Ring*, 296 P.3d 32, 37 (Alaska 2013) (citing *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007)).

[5]   *Id.* (quoting *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 793 (Alaska 1997)) (internal quotation marks omitted).

judgment as a matter of law."[6] The moving party "has the burden of showing that there is an absence of a factual dispute on a material fact and that this absence of a dispute constitutes a failure of proof on an essential element."[7] Once the moving party has presented a prima facie case, the non-moving party "must set forth specific facts showing that admissible evidence could be produced that reasonably tends to dispute or contradict the moving party's evidence in order to demonstrate the existence of a dispute of material fact."[8]

### A. There Is No Genuine Issue Of Material Fact As To Whether DOC Reasonably Should Have Foreseen Kemp's Suicide Attempt.

Jailers owe their prisoners a duty "to exercise reasonable care for the protection of [the prisoners'] lives and health," which "encompasses a duty to prevent self-inflicted harm that is reasonably foreseeable."[9] The "jailer must exercise a higher degree of care when the jailer knows or reasonably should have foreseen that the prisoner was incapacitated, suicidal, or otherwise in danger."[10]

In support of its motion for summary judgment, DOC presented evidence that Kemp's attempted suicide was not reasonably foreseeable. Dr. Bingham, DOC's clinical director, testified by affidavit that she had reviewed Kemp's "DOC medical records from January 2008 through May 16, 2008, when he was released from DOC

---

[6] Alaska R. Civ. P. 56(c).

[7] *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (citations omitted).

[8] *Id.*

[9] *Joseph v. State*, 26 P.3d 459, 466-67 (Alaska 2001) (citations omitted).

[10] *State, Dep't of Corr. v. Johnson*, 2 P.3d 56, 60 (Alaska 2000) (internal quotation marks omitted).

custody," and that based on that review she concluded: (1) that Kemp's initial screening for suicide risk at the time he was booked into jail showed no sign that he was "likely to harm himself"; (2) that prior to his suicide attempt "[t]here were no signals of clinical depression or psychosis"; (3) that Kemp "did not request mental health counseling" while in jail; and (4) that nothing in Kemp's file "suggests that he should have been monitored as a suicide risk." On appeal, Achman points to two categories of evidence that she claims raise a genuine issue of material fact: (1) Kemp's medical and DOC records preceding his 2008 incarceration, and (2) Kemp's possession of several books, including the Bible and a novel.

### 1. DOC records

Achman argues that DOC should have reasonably foreseen Kemp's suicide attempt because he had been diagnosed with suicidal ideation between 1995 and 2001. In support of this argument, however, Achman cites only to the report of her expert, Dr. Orfuss, and his review of Kemp's medical history. There is no evidence that the particular medical records on which Dr. Orfuss relies were, or should have been, in DOC's possession at the time of Kemp's attempted suicide, nor does Achman explain why DOC should otherwise have been aware of that earlier diagnosis.[11]

Achman also asserts that her son wrote a letter to the DOC parole board in 2005, three years before the events at issue here, in which he talked about having contemplated suicide. But the documents supporting this assertion were never actually presented to the superior court and are not now in the record, and we therefore cannot

---

[11]    At oral argument on the summary judgment motion, Achman's attorney conceded that Dr. Orfuss had not reviewed DOC's medical records, which would have shown what DOC knew or should have known about Kemp's mental health. Dr. Orfuss did not reach any other conclusions regarding the foreseeability of Kemp's suicide attempt.

consider them.[12] Indeed, Achman did not present an argument based on her son's earlier history with DOC until she filed a motion for reconsideration following the entry of summary judgment, when she quoted from the letter to the parole board but did not submit the letter itself. Even had the superior court been required to consider new evidence on reconsideration (which it was not),[13] the unsupported factual assertion in Achman's motion for reconsideration was not enough to create a genuine issue of material fact that could defeat summary judgment.[14]

---

[12] "The record on appeal consists of the entire trial court file, including the original papers and exhibits filed in the trial court, the electronic record of proceedings before the trial court, and transcripts, if any, of the trial court proceedings." Alaska R. App. P. 210(a). "Material never presented to the trial court may not be added to the record on appeal." *Id.*

[13] *Koller v. Reft*, 71 P.3d 800, 805 n.10 (Alaska 2003) (citing *Dunn v. Dunn*, 952 P.2d 268, 271 n.2 (Alaska 1998)) (noting that it is not appropriate to submit new evidence on a motion for reconsideration, and this court therefore does not consider such evidence on appeal); *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 663 (Alaska 2001) (citing *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995)) (observing that Rule 77(k) cannot "be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim").

[14] "We . . . do not rely on unsupported assertions of fact in memoranda for purposes of our review of summary judgment." *Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 363 n.15 (Alaska 2010); *see also Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 783 (Alaska 1975) ("Assertions of fact in pleadings and memoranda are not admissib[le] evidence and cannot be relied upon for the purposes of summary judgment.").

### 2. Books

Achman argues that Kemp's possession of several books, including the Bible and the novel *A Lesson Before Dying*,[15] "should have led [DOC] to be concerned about Mr. Kemp's mental state while in administrative segregation." The superior court rejected this argument because Achman did not present expert or other evidence "that possession of those books somehow foreshadows suicide." We must draw all reasonable inferences from the evidence in favor of the non-moving party,[16] but Achman fails to explain why a risk of suicide is a reasonable inference to be drawn from the possession of these two books, and the reasonableness of such an inference is not apparent.

### B. There Is No Genuine Issue Of Material Fact As To Whether DOC Negligently Failed To Follow Its Own Policies.

DOC Policy 807.02(VII)(E)(1) states that "[a] health care staff member shall visit segregation units at least daily during routine rounds or while dispensing medication." Achman argues that DOC was negligent because it failed to follow this policy.[17]

---

[15] *A Lesson Before Dying* is a popular, prize-winning novel about confronting racial injustice in 1940s Louisiana. *See* Michael Swindle, *Louisiana Justice*, L.A. TIMES, May 30, 1993, http://articles.latimes.com/1993-05-30/books/bk-41358_1_louisiana-justice (reviewing ERNEST J. GAINES, A LESSON BEFORE DYING (1993)). Achman does not address the novel's content or explain why its possession should have caused concern; she apparently seeks an inference of mental instability based solely on the book's title.

[16] *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 350 (Alaska 2013); *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 449 (Alaska 2002).

[17] Achman's jail operations expert, Jeff Eiser, opined, among other things, that DOC was negligent because its policies do not comply with the American Correctional Association Performance-Based Standards for Adult Local Detention Facilities. Achman does not, however, pursue this argument on appeal.

The evidence related to this issue included segregation logs, health care progress notes, and the affidavit of Cheryl Vargo, the nursing supervisor at the Anchorage Correctional Complex.[18] Vargo attested in her affidavit that she had "reviewed the [DOC] medical records pertaining to Charles Kemp's incarceration in 2008, including his nursing and pharmaceutical records," and from this review had concluded that "Mr. Kemp was personally visited at least twice a day in his cell by a nurse" while he was in segregation.

Achman challenges Vargo's testimony by pointing to a six-day gap in the health care progress notes between March 23 and March 29, the day of Kemp's attempted suicide. DOC Policy 807.02(VII)(E)(3) states that "[h]ealth care staff shall record all segregation visits *in the Segregation Log* and all health care actions in the appropriate medical record." (Emphasis added.) The segregation logs do in fact support the statement in Vargo's affidavit that Kemp received two or three medical visits nearly every day he was in segregation.[19] The health care progress notes on which Achman relies do not purport to be a daily log, and no witness testified that they should be so construed. Again, Achman's argument alone is not enough to create an issue of fact.[20]

---

[18] The segregation logs and health care progress notes do not appear to have been authenticated in the trial court, but their authenticity is not challenged on appeal, and both parties rely on them.

[19] The segregation log for March 20, 2008, lacks a signature in the section for medical visitors. Kemp's health care progress note for that date, however, shows a "Med Review" and a prescription for "Naproxen 250 mg." The records thus support Vargo's affidavit testimony, and no evidence contradicts it.

[20] *Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 363 n.15 (Alaska 2010); *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 783 (Alaska 1975).

**C.    The Superior Court Did Not Err In Granting Summary Judgment On The Medical Malpractice Claim.**

Achman alleged in her complaint that DOC "failed to provide the necessary medical treatment Mr. Kemp needed after being discharged from Alaska Regional Hospital." In an action for medical negligence, the plaintiff has the burden of establishing the degree of care ordinarily exercised under the circumstances by health care providers in the defendant's field or speciality, that the defendant failed to exercise this degree of care, and that the defendant's failure to exercise this degree of care proximately caused the plaintiff's injuries.[21] Ordinarily, the plaintiff is required to present expert testimony in support of the claim that the defendant failed to exercise the required degree of care.[22]

DOC supported its motion for summary judgment on the medical malpractice claim with the affidavits of its clinical director, Dr. Bingham, and its medical director, Dr. Henry Luban, both of whom described the medical care Kemp received following his discharge from the hospital, asserted that the medical care met the appropriate standard of care, and concluded that Kemp's injuries, though very unfortunate, were not the result of medical neglect.

In her opposition, Achman presented the affidavit of her expert, Dr. Orfuss. Dr. Orfuss opined that Kemp, following his hospital discharge, had "obvious cognitive and physical deficits from his anoxic brain injury" and "was not able to walk, talk, or feed himself." Dr. Orfuss was of the opinion that Kemp "needed constant supervision

---

[21]    AS 09.55.540(a).

[22]    *Hertz v. Beach*, 211 P.3d 668, 680 (Alaska 2009); *see also Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1115 (Alaska 2002) (citing *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984)) ("We have held that, where negligence is not evident to lay people, the plaintiff in a medical malpractice action must present expert testimony to establish the claim.").

and was at risk for hurting himself and others," and that he "should have been placed in the medical ward for ongoing treatment and medical care." Based on the information he had reviewed, Dr. Orfuss concluded that DOC breached the duty to provide this care and generally "failed to provide adequate medical attention to Mr. Kemp after his attempted suicide."

As the superior court noted, "[o]rdinarily, such an affidavit would be sufficient to create a question of material fact to survive summary judgment." But Dr. Orfuss's opinion about the level of DOC's medical care was based on his belief that "[u]pon Mr. Kemp's return to [the Anchorage jail], he was housed in general population and not in the medical ward." Dr. Orfuss also testified at his deposition that Kemp had received no rehabilitation services. But these factual assumptions were mistaken, as DOC's records indisputably showed. According to the records, Kemp was placed in medical segregation upon his hospital discharge and kept there until May 2; during this time he was evaluated for occupational, speech, and physical therapy and attended a number of sessions; when he was returned to the general population he was assigned a 24-hour caregiver; he remained in the general population until May 8, when he was placed in administrative segregation because of behavioral issues; and a day later he was returned to the mental health unit in medical segregation, where he remained until his release on May 16.

Dr. Orfuss's opinion that Kemp "was housed in general population and not in the medical ward" upon his hospital discharge was based not on the DOC records but rather, as he explained in his deposition, on the allegations of the complaint. Counsel for Achman conceded at the summary judgment hearing that Dr. Orfuss had not reviewed Kemp's DOC medical records at the time he formed his opinions, and the attorney conceded that Kemp had in fact been returned to the medical ward upon his discharge from the hospital. The superior court asked, "So the expert opinion that you offer is

based on undisputedly mistaken facts?" Achman's counsel conceded this to be true. Because Dr. Orfuss's opinion lacked a sufficient foundation in the facts of the case, the superior court found that it was inadequate to "reasonably contradict the State's evidence that Kemp received proper medical care."

Affidavits submitted on summary judgment "must be based upon personal knowledge, set forth facts that would be admissible evidence at trial and affirmatively show that the affiant is competent to testify to the matters stated."[23] "Specifically, opinion testimony and hearsay statements that would be inadmissible at trial are inadmissible in a motion for summary judgment."[24] Expert opinions are admissible at trial only if they will "assist the trier of fact to understand the evidence or to determine a fact in issue."[25] An expert's opinion does not need to be based on otherwise admissible evidence, but the facts or data "must be of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."[26]

Dr. Orfuss's opinion that DOC failed to meet the applicable standard of medical care plainly misunderstood what Kemp's medical care had actually been. An expert opinion that is not based on the actual facts of the case is unlikely to assist the trier of fact to understand the evidence or determine a fact in issue, as is required for its admissibility underAlaska Evidence Rule 703. Like the superior court, therefore, we

---

[23] *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 804 (Alaska 2012) (quoting *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991)) (internal quotation marks omitted).

[24] *Broderick*, 808 P.2d at 1215.

[25] Alaska R. Evid. 702(a).

[26] Alaska R. Evid. 703.

conclude that Dr. Orfuss's affidavit was insufficient to create a genuine issue of material fact.[27]

On appeal, Achman attempts to recast Dr. Orfuss's opinion as supporting a claim that Kemp's return to the general population, even if it did not happen immediately upon his discharge from the hospital, was still too soon. But Dr. Orfuss's report, his affidavit, and his later deposition testimony all confirm his mistaken factual assumption that Kemp had never been housed in the medical ward.[28] It may be that Dr. Orfuss found DOC's medical care to be inadequate even after having learned what it was, as Achman's counsel advised the trial court during oral argument. But an expert opinion in support of the plaintiff's position — and based on the actual facts of the case — does not appear in the record.

Achman's medical malpractice claim fails for another reason: she failed to demonstrate a genuine issue of material fact regarding causation. Achman claims that causation is shown by evidence that (1) following his suicide attempt Kemp was eventually returned to the general population at the Anchorage Correctional Complex, (2) while there he engaged in inappropriate behavior, and (3) he had to be reassigned to

---

[27] *See Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 130 (Tex. App. 2001) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment."); *Rothweiler v. Clark Cnty.*, 29 P.3d 758, 763 (Wash. App. 2001) ("In the context of a summary judgment motion, an expert must support his opinion with specific facts, and a court will disregard expert opinions where the factual basis for the opinion is found to be inadequate.").

[28] In fact, Dr. Orfuss testified that Kemp should never have been returned to jail at all, a position that Achman declines to endorse on appeal. DOC was required to keep Kemp in custody; following his suicide attempt, the district court issued successive orders for Kemp to be held on $2,500 bail.

the mental health ward. It is true that these facts are undisputed. But Achman presented no evidence tending to show that Kemp's behavioral problems and consequent return to the mental health ward were due to medical malpractice. As the superior court correctly found, none of Achman's expert witnesses[29] "opined that Kemp's damages were in any way aggravated by negligent medical care following [Kemp's] return to DOC custody," and DOC was entitled to summary judgment on this ground as well.

E. **The Superior Court Did Not Abuse Its Discretion In Its Attorney's Fees Award.**

In support of its motion for Rule 82 attorney's fees, the State asserted that it had incurred actual reasonable fees of $121,487.44. The superior court awarded the State 20% of that amount pursuant to Rule 82(b)(2). Achman contends that the award was excessive because the court should have applied the discretionary factors of Rule 82(b)(3) — particularly "other equitable factors deemed relevant" under Rule 82(b)(3)(K) — given Kemp's disability and lack of income. However, attorney's fee "[a]wards made pursuant to the schedule of Civil Rule 82(b) are presumptively correct,"[30] and the (b)(3) adjustments are discretionary.[31] There is nothing in the record from which we could conclude that the superior court was arbitrary, capricious, or

---

[29]     In addition to Dr. Orfuss, Achman presented the opinion of Carl Gann, an expert in rehabilitation counseling and life-care planning. Gann discussed Kemp's damages but did not opine on causation.

[30]     *Williams v. Fagnani*, 228 P.3d 71, 77 (Alaska 2010).

[31]     *Id.* (citing *McGlothlin v. Municipality of Anchorage*, 991 P.2d 1273, 1277 (Alaska 1999)).

manifestly unreasonable when it awarded attorney's fees pursuant to the schedule and declined to apply the discretionary factors of Rule 82(b)(3).[32]

## V.    CONCLUSION

For the foregoing reasons we AFFIRM the judgment of the superior court.

---

[32]    *See Weilbacher v. Ring*, 296 P.3d 32, 37 (Alaska 2013).